UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                           CASE NO. 8:19-cr-447-T-24TGW

NORMAN NICHOLSON

### UNITED STATES SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, submits this memorandum regarding Nicholson's guideline calculation.

### BACKGROUND

During the early morning hours of June 16, 2018, then Department Of Veteran Affairs ("V.A.") police officer Norman Nicholson used excessive and unnecessary force during and after he arrested a V.A. patient ("Victim") at the Bay Pines V.A. in Clearwater, Florida. Nicholson later wrote an official police report and arrest affidavit charging the victim with disorderly conduct and resisting arrest without violence. In his police report and arrest affidavit, Nicholson made numerous false statements, and flat out lies.

On October 1, 2019, Nicholson was indicted for knowingly making false entries in a report with the intent to obstruct an investigation within the

jurisdiction of a federal agency, in violation of 18 U.S.C. § 1519, and one count of intentionally depraving the victim of his Fourth Amendment right to a reasonable search and seizure under color of law, in violation of 18 U.S.C. § 241 (a misdemeanor). On March 24, 2020, Nicholson pleaded guilty to both Counts. He is currently scheduled to be sentenced on June 24, 2020.

In anticipation of his sentencing, the United States Probation Office issued Nicholson's Initial Presentence Investigation Report ("PSR"). Doc. 29. In this PSR, Nicholson's adjusted offense level was calculated to be 20, while his total offense level was 17. Based upon a total level of 17, and a criminal history category of I, the guidelines prescribe a term of imprisonment between 24 and 30 months.

Since the release of the initial PSR, and culminating in the release of Nicholson's final PSR, the parties have engaged in several good faith—but ultimately unsuccessful—attempts at reconciling disagreements over Nicholson's guideline calculations. Although an agreement between the parties prior to the sentencing hearing is still possible, it is not guaranteed. Because Nicholson is scheduled to be sentenced in less than a week, the United States hereby outlines what it believes to be Nicholson's correct guideline calculations. To be clear, the United States agrees with U.S. Probation that Nicholson is a total offense level 17; the parties simply disagree with how they arrive at that conclusion.

Specifically, the United States objects to paragraphs 23, 26, and 27 of Nicholson's PSR, and contends that: 1) pursuant to USSG §2H1.1 Nicholson's "underlying offense" is assault, and not obstruction of justice;[1] 2) that Nicholson's obstruction of justice warrants a two-level increase under USSG §3C1.1,[2] and 3) that Nicholson warrants a two-level offense level increase under USSG §3A1.3 because the victim was physically restrained in the course of the offense.[3]

## I. Group One—Civil Rights Violation

The guideline for a violation of 18 U.S.C. § 242 is USSG §2H1.1. To calculate the correct base offense level, section 2H1.1 directs the court to apply the greatest of (1) the offense level from the offense guideline applicable to any underlying offense; (2) 12, if the offense involved two or more participants; (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage, or (4) 6, otherwise. Application Note 1 of section 2H1.1 defines the "Offense guideline applicable to any underlying offense" as "the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law (other than an offense that is itself covered under Chapter Two, Part H, Subpart 1)." The PSR considered Nicholson's "underlying offense" as the

---

[1] Final PSR paragraph 23. Doc. 33.
[2] Final PSR paragraph 26. Doc. 33.
[3] Final PSR paragraph 27. Doc. 33.

conduct that gave rise to Count 1, namely, making false statements in a police report, and arrest affidavit. The United States respectively disagrees that Nicholson's obstruction constitutes his underlying offense under section 2H1.1 Specifically, the United States contents that Nicholson's conduct more closely resembles assault, and that Nicholson's obstruction is properly reflected as an enhancement to his guidelines.

The point of the "underlying offense" cross reference in 2H1.1 is to "punish more severely (and to provide a greater disincentive for) … prosecutions with respect to more serious crimes." *United States v. Arias*, 253 F.3d 453, 459 (9th Cir. 2001). *See United States v. Byrne*, 435 F.3d 16, 27 (1st Cir. 2006) ("The Sentencing Commission's purpose of establishing the cross reference was so that defendants be punished at least as severely as if they had occurred under federal jurisdiction but not during a civil rights violation."). In this regard, section 2H1.1 "provides a floor, not a ceiling." *United States v. Byrne,* 435 F.3d 16, 27 (1st Cir. 2006). The "defendant's sentence should be on par with other defendants in federal court who committed similar conduct under federal jurisdiction." *United States v. Cozzi,* 613 F.3d 725, 733 (7th Cir. 2010).

a.   <u>**Underlying Offense**</u>

When determining the "underlying offense," for purposes of the cross reference, a sentencing court need not look to the offense of conviction. *United*

*States v. Pierson*, 946 F.2d 1044, 1047 (4th Cir. 1991) (concluding that USSG §2X3.1 does not require "underlying offense" to be an offense of conviction); *also see United States v. v. McQueen,* 86 F.3d 180, 184 (11th Cir. 1996) ("If the underlying offense always constituted the offense of conviction, perjurers would be able to benefit from perjury that successfully persuaded a grand jury not to indict or a petit jury not to convict."); *United States v. Conley,* 186 F.3d 7, 23–24 (1st Cir. 1999) ("The cross-reference looks to what the grand jury was investigating, not what indictment was returned or what crime actually occurred".).

The defendant "could only violate victim's civil rights by doing something; it was that something that constituted underlying offense for purposes of USSG §2H1.1, regardless of how many substantive counts with which defendant was charged." *Id.* 734. Courts have looked at the conduct giving rise to the civil rights violation to determine the "underlying offense." In a case where a police officer raped a woman during a traffic stop and then knowingly made false statements about what happened, the underlying offense was aggravated rape—and not obstruction. *United States v. Greer*, 872 F.3d 790 (6th Cir. 2017). Similarly, conduct of a police officer who repeatedly struck a victim with a dangerous weapon constituted aggravated assault as the underlying offense. *United States v. Cozzi,* 613 F.3d 725, 733 (7th Cir. 2010). *Also see, United States v. LeMoure*, 474 F.3d 37, 45

5

(1st Cir. 2007) (Police officer who attacked victim using a flashlight committed aggravated assault as an underlying offense); *United States v. Brown*, 934 F.3d 1278 (11th Cir. 2019) (Police officer who punched and kicked the occupants of a vehicle and later omitted these details from the police report committed aggravated assault as the underlying offense).[4]

In this case, Nicholson forcefully shoved and later rammed the victim's head against the fence, used a takedown move to pull his legs apart causing him to fall face first on the ground, and later picked the victim up by applying an infraorbital move designed to hit the victim's pressure points. It is that conduct, and not the obstruction that he later committed, that caused the civil rights violation. Because Nicholson did not use a dangerous weapon, the United States contents that Nicholson's conduct more closely falls within the definition of assault.[5]

    b.    <u>Assault</u>

Pursuant to USSG §2A2.3, the guidelines prescribe a base offense level of seven if "the offense involved physical contact, or if a dangerous weapon was

---

[4] *United States v. McQueen*, 86 F.3d 180, 184 (11th Cir. 1996) (citing USSG §1B1.5 comment. (n.3)—"where cross-referencing required, and more than one offense applicable, the most serious offense is to be used.").
[5] Section 2A2.2 applies to "aggravated assault," which is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." USSG §2A2.2, Application Note 1.

possessed." Section 2A2.3(a)(1). If the victim sustained bodily injury, the base offense is increased by two levels. Section 2A2.3 (b). Application Note 1 (b) of section 1B1.1 defines bodily injury as "any significant injury … an injury that is painful and obvious or is of a type for which medical attention ordinarily would be sought." In this case, the victim suffered bruises to his shoulder, and he had pain in his right hand, wrist, and thumb. As such, an assault classification as the defendant's underlying offense with the additional enhancement would prescribe a base offense level of nine. Because USSG §2H1.1 instructs the court to apply the greatest of USSG §2H1.1(a)(1) "underlying offense" or (a)(2) "10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage, Nicholson's base offense level would ultimately be 10.[6]

### c.     Applicable Enhancements

Moreover, USSG §2H1.1 (b)(1) calls for an additional six levels if the "defendant was a public official at the time of the offense; or (B) the offense was committed under color of law." In this case, Nicholson was on active duty and active patrol at the time of the offense, working inside the V.A., in his capacity as a police officer. There is no question Nicholson was acting under color of law.

---

[6] A two-level enhancement for bodily injury under section 2A2.3(b) would ultimately have no bearing on Nicholson's guideline calculation.

Furthermore, USSG §3A1.3 provides a two-level enhancement "if the victim was physically restrained in the course of the offense." The Guidelines define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." USSG §1B1.1 n.1(L). In *United States v. Coleman*, the court explained that "force" is to "compel … one's actions by physical means or by legal requirement." 664 F.3d 1047, 1049 (6th Cir. 2012) (quoting *Black's Law Dictionary* 718 (9th ed. 2009). The inquiry "does not turn on whether the victim was in danger, but on whether the victim was unable to leave." *United States v. Santiago*, 200 F. App'x 928, 934 (11th Cir. 2006). *Also see United States v. Vallejo,* 297 F.3d 1154, 1167 (11th Cir. 2002) (definition of "physically restrained" in section 1B1.1 "include[s] a situation in which the victims were held against their will, were left with no alternative but to comply with the defendant and had no effective way of leaving."); *United States v. Clayton,* 172 F.3d 347, 353 (5th Cir. 1999) ("vulnerability of handcuffed victim is not mitigated by lawfulness of restraint"). Nicholson's unnecessary and excessive force towards the victim occurred largely after Nicholson had placed the victim in handcuffs. The victim was restrained, unable to leave, or defend himself.

Additionally, USSG §3C1.1 states that: "if (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant

offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or a closely related offense, increase the offense level by 2 levels." USSG §3C1.1 comment. n.4 provides a non-exhaustive list of the types of conduct to which the obstruction enhancement would apply. Specifically, n.4(C) includes "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." Additionally, n.4(H) lists "other conducted prohibited by obstruction of justice provisions under 18 U.S.C. § 1510." Nicholson made numerous false statements in his probable cause affidavit, and accompanying police report. He was later charged with a violation of 18 U.S.C. § 1510 and pleaded guilty to that violation. The facts outlined in his plea agreement, and which Nicholson swore were true, conclusively proves he obstructed justice. Doc. 19.

   Nicholson's Count 1 conviction for obstruction of justice has no bearing on whether this enhancement applies to Group 1. *See United States v. Hickman*, 766 F. App'x 240, 249 (6th Cir. 2019) (defendant who pleaded guilty to two counts of aiding and abetting deprivation of civil rights under color of law, and one count of obstruction of justice, is also eligible for obstruction of justice enhancement for his color of law violation. Noting that the accompanying comments for section 3C1.1 explain that "if the defendant is convicted of [an obstruction offense]," the

9

enhancement "is not to be applied to the offense level for *that* offense" unless "significant further obstruction occurred." Section 3C1.1 comment. n.7.)[7]

A base offense level of 10, coupled with an additional six levels for acting under color of law, two levels because the victim was physically restrained in the course of the offense, and two levels for obstruction of justice, result in an adjusted offense level of 20 for Nicholson's civil rights violation under Group 1.

## II. Group 2—Obstruction of Justice

Generally, the guidelines prescribe a base offense level of 14 for obstruction of justice. USSG §2J1.2. Under that section, the court is instructed that "if the offense (A) involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative records, document, or tangible object, to destroy or alter; or (C) was otherwise wise extensive in scope, planning, or preparation, increase by two levels. In this case, Nicholson's obstruction and false statements in a police report and arrest affidavit lead to the victim's arrest and detention at the Pinellas County jail for a week. It is hard to imagine a more

---

[7]The Court also held that district court's application of a two-level enhancement under section 3C1.1 for obstruction of justice, and six-level enhancement under section 2H1.1(b)(1)(B) for acting under color of law did not constitute impermissible double counting.

probative or essential document then one that removes an individuals' freedom and wrongly sends that person to jail.

A base offense level of 14, coupled with an additional two levels because the obstruction involved the selection of an essential record, results in an adjusted offense level of 16 under USSG §2J1.2. The guidelines also provide that, "if the offense involved obstructing the investigation or prosecution of a criminal offense, apply section 2X3.1 (Accessory After the Fact) if the resulting offense level would be greater than that determined above." USSG §2J1.2(c)(1). For the reasons discussed below, a guideline provision under section 2X3.1 would be lower than under section 2J1.2 (a), and so a base offense level of 16 would govern the offense level of Group 2.

    a.    <u>**Accessory After the Fact**</u>

An accessory after the fact is assigned an offense level six levels below that prescribed for the underlying offense. Section 2X3.1. In applying the underlying offense, the court is instructed to "apply the base offense level plus any applicable specific offense characteristic … ." Section 2X3.1. comment. n.1. In this case, the underlying offense would be the civil rights violation (assault) in Count 2, the analysis of which would largely mirror the discussion under Group 1 of this memorandum. Specifically, a base offense level of 10 (pursuant to section 2H1.1(a)(3)(A)), coupled with an additional six levels for acting under color of

law (section 2H1.1 (b)(1)) and two levels because the victim was restrained in the course of conduct, would result in a base offense level of 18. The only enhancement that applied in Group 1, which would not apply in Group 2—but which would apply once the two counts are grouped together—is the obstruction of justice enhancement that applied to Group 1. *United States v. Pego*, 567 F. App'x 323, 330 (6th Cir. 2014) (citing section 3C1.1 n.8) (explaining that "when an obstruction offense is grouped together with other counts for purposes of determining the defendant's base offense level, 'the obstruction of justice enhancement applies to the grouped counts ... .'").[8]

Referring back to section §2X3.1, the base offense level of 18 would then be subtracted by six, for a total offense level of 12 under section 2X3.1.[9] Because an offense level of 16 under section 2X3.1 (Group 2) is lower than offense level 20 under section 2J1.2 (Group 1), the base offense level under section 2J1.2

---

[8] *See United States v. Yielding*, 657 F.3d 688, 717 (8th Cir. 2011) (when an obstruction of justice offense is grouped with an underlying offense, the offense level for the grouped offense is the offense level for the underlying offense increased by the two-level obstruction adjustment under section 3C1.1, or the offense level for the obstruction of justice offense, whichever is greater. USSG §3C1.1, comment. (n.8). "This rule is designed to prevent double-counting by ensuring that the obstructive conduct is taken into account only once: as a two-level adjustment to the base offense level for the underlying offense, or as the offense level provided for the obstruction offense itself." *See id.* section 3D1.2, comment. (n.5)).

[9] For a similar computation of the guidelines, *see United States v. LeMoure*, 474 F.3d 37, 46 (1st Cir. 2007).

(Group 1) would govern Nicholson's guidelines. As directed by section 3D1.3, the Court should apply the Group 1 offense level of 20 because it is the higher than the Group 2 offense level of 16. Additionally, Counts One and Two are grouped together because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. USSG §3D1.2(b). A subsequent three-level decrease for acceptance of responsibility would result in a total offense level of 17.

## CONCLUSION

For the reasons discussed above, the United States contends that Nicholson's "underlying offense" is assault, and not obstruction of justice, and that Nicholson warrants two level offense level increases for obstruction of justice and because the victim was physically restrained in the court of the offense.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:   /s/ *Diego F. Novaes*
      Diego F. Novaes
      Assistant United States Attorney
      Florida Bar No. 107376
      400 N. Tampa St., Ste. 3200
      Tampa, FL 33602-4798
      Telephone: (813) 274-6000
      Facsimile: (813) 274-6358
      E-mail: Diego.Novaes@usdoj.gov

| | |
|---|---|
| U.S. v. Nicholson | Case No. 8:19-cr-447-T-24TGW |

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Franklyn Louderback, Esq.

                                        */s/ Diego F. Novaes*
                                        Diego F. Novaes
                                        Assistant United States Attorney
                                        Florida Bar No. 107376
                                        400 N. Tampa St., Ste. 3200
                                        Tampa, FL 33602-4798
                                        Telephone: (813) 274-6000
                                        Facsimile: (813) 274-6358
                                        E-mail: Diego.Novaes@usdoj.gov